**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Irvin Darryl Williams, Sr., | No. CV-17-01834-PHX-DWL |
| Petitioner, | **ORDER** |
| v. | |
| Charles L Ryan, et al., | |
| Respondents. | |

On June 13, 2017, Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) Later, Petitioner filed an amended petition. (Doc. 17.) On September 30, 2020, after years of extensive motions practice, Magistrate Judge Metcalf issued a 205-page Report and Recommendation ("R&R") concluding the amended petition should be denied and dismissed with prejudice. (Doc. 125.) Afterward, Petitioner filed objections to the R&R (Doc. 127) and Respondents filed a response (Doc. 132). For the following reasons, the Court will overrule Petitioner's objections, adopt the R&R, and terminate this action.

I.  Background

*The Underlying Crime*. Petitioner was married to BW, who had a daughter (MH) and a step-daughter (AW). (Doc. 125 at 2.) In April 2014, MH and AW disclosed to BW that Petitioner had inappropriately touched them. (*Id.*) In response, BW confronted Petitioner, forced him to leave the house, and took MH and AW to the police station, where they were forensically interviewed. (*Id.*) A few days later, Petitioner received a phone call

from BW that, unbeknownst to him, was being monitored by the police. (*Id.*) During this call, Petitioner admitted that he had touched MH and AW inappropriately. (*Id.*)

*The Charges, Trial, And Sentence*. Petitioner was indicted in Maricopa County Superior Court on one count of sexual abuse and two counts of molestation. (*Id.*) The charges pertained only to Petitioner's acts toward MH.

Petitioner represented himself, with counsel remaining in an advisory capacity, during most of the pretrial proceedings. (*Id.* at 3.) During this period, Petitioner also filed a series of unsuccessful special action petitions. (*Id.* at 4)

During voir dire, Petitioner requested reappointment of counsel. (*Id.* at 3.) This request was granted. (*Id.*) Thus, Petitioner was represented by counsel during trial. (*Id.*) The jury eventually convicted Petitioner on all three counts. (*Id.*)

One of the key witnesses at trial was MH, who testified "that when she and her family lived in a house in Laveen, Arizona, between July 1, 2013 and November 30, 2013, [Petitioner] rubbed her stomach, while she was sick, laying on a couch. [Petitioner] then rubbed her breasts and vagina under her clothes. Afterward, [Petitioner] took MH's hand and made MH rub his penis. MH was fourteen years old at the time. MH testified [Petitioner] also abused her prior to their move to Arizona." (*Id.* at 2.)

Another witness was the police officer who monitored BW's confrontation call to Petitioner. This officer "testified that during the confrontation call, [Petitioner] denied having sex with the girls, but . . . did not deny touching MH's breasts and vagina . . . [and] also stated he needed help regarding his sexual aberration." (*Id.*)

Finally, the jury also heard testimony from AW, who "testified that as a young teenager she had a good relationship with Petitioner who she trusted more than her own mother who was harsh with her. When she was 15, while they lived in Illinois, after BW and Petitioner found out that she had lost her virginity, Petitioner took her to their church. She thought they were there to talk or pray. But Petitioner ordered her to take off her pants, made her watch him masturbate in front of her, and afterward hugged her while his penis was still exposed, pressing it on her chest. AW testified that on another occasion Petitioner

grabbed her as they passed in the hallway of the home, brushing his clothed penis against her and told her 'just like last time, you just have to watch.'" (*Id.* at 154-55.) During cross-examination, "AW admitted that she originally denied abuse to her mom, but after hearing that MH had been abused, she told her. She asserted she did not report her abuse just to support her sister, but because it was true." (*Id.* at 155.)

On January 22, 2016, Petitioner was sentenced to concurrent 20-year terms of imprisonment on the molestation charges and to lifetime probation on the sexual abuse charge. (*Id.*)

*The Direct Appeal*. Petitioner timely appealed his conviction and sentence. (*Id.* at 4.) After Petitioner's appointed counsel filed an *Anders* brief "advising . . . that after a search of the entire appellate record, no arguable ground for reversal exists," Petitioner filed a *pro se* supplemental brief. *State v. Williams*, 2017 WL 34857, *1 (Ariz. Ct. App. 2017). This brief raised the following assignments of error:

(1) Insufficient evidence.

(2) Denial of the right to a speedy trial.

(3) Error in the trial court's rulings on: (A) the motions to suppress the confrontation call; (B) the sanctions imposed on the prosecution for untimely disclosures of portions of the confrontation call; (C) failure to admit evidence of other abuse charges involving AW (Petitioner's victim's sister) as a victim; (D) failure to disclose administrative investigations regarding Detective Fiore's handling of other investigations; (E) holding a voluntariness hearing regarding the confrontation call; (F) a request to impeach AW regarding delay in report; and (G) admission of prior acts evidence.

(4) Due process violations based on: (A) perjury at the grand jury; (B) perjury at trial; (C) failure to strike a juror; (D) denial of right to self-representation at bench conferences.

(5) Prosecutorial misconduct regarding: (A) comments on statements to the

police; (B) comments on witness credibility; (C) misstatements of the evidence.

    (6)    Judicial bias.

    (7)    Cumulative error.

(Doc. 125 at 5.)

On January 4, 2017, the Arizona Court of Appeals issued a memorandum decision affirming Petitioner's convictions and sentences. (*Id.*) Afterward, Petitioner filed a motion for reconsideration, which was denied. (*Id.*)

On September 12, 2017, the Arizona Supreme Court summarily denied Petitioner's petition for review. (*Id.*) The mandate issued on October 19, 2017. (*Id.*)

*The First PCR Proceeding*. On January 22, 2016, while his direct appeal was still pending, Petitioner filed notice of post-conviction relief ("PCR"). (*Id.* at 6.) Petitioner later filed a corresponding PCR petition. (*Id.*)

On August 24, 2016, the trial court summarily dismissed the PCR petition on various grounds. (*Id.*) Petitioner also filed a motion for reconsideration, which was denied. (*Id.*)

*The Second PCR Proceeding*. On June 21, 2017, Petitioner filed another PCR notice. (*Id.*) Afterward, Petitioner filed a corresponding PCR petition. (*Id.*)

On March 7, 2018, the trial court summarily dismissed the PCR petition. (*Id.*)

*The Petition For Review*. On January 12, 2018, while his second PCR proceeding was still pending, Petitioner filed a motion to extend time to seek review. (*Id.*)

On January 16, 2018, while the motion was still pending, Petitioner filed a petition for review with the Arizona Court of Appeals. (*Id.* at 7.)

On January 23, 2018, the appellate court dismissed the petition as premature. (*Id.*) Petitioner thereafter filed a motion for clarification, prompting the appellate court to issue an order clarifying that the dismissal should have been on the basis that the petition was delinquent, not premature. (*Id.*)

In February 2019, Petitioner filed a second motion for clarification with the

appellate court. (*Id.*) The motion was stricken because the appellate case was closed. (*Id.*)

At the same time, Petitioner filed a motion for clarification with the trial court, seeking clarification as to why his motion to extend time to seek review had not been addressed. (*Id.*) On March 8, 2019, the motion was summarily denied. (*Id.*)

*The Habeas Claims*. On June 13, 2017, Petitioner initiated this action by filing a habeas petition. (Doc. 1.) In the amended petition (Doc. 17), Petitioner asserts 26 grounds for relief, which actually "contain some 60 separate claims." (Doc. 125 at 9.) A summary of those claims is set forth in the R&R. (*Id.* at 9-11.)

*The R&R*. The 205-page R&R concludes that some of Petitioner's claims should be dismissed with prejudice and the remaining claims should be denied. (*Id.* at 203-04.) Rather than summarize each claim on an individual basis, the Court will simply address, in Part III below, the subset of claims as to which Petitioner has now lodged objections.

II.   Legal Standard

A party may file written objections to an R&R within fourteen days of being served with a copy of it. Rules Governing Section 2254 Cases 8(b) ("Section 2254 Rules"). Those objections must be "specific." *See* Fed. R. Civ. P. 72(b)(2) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.").

District courts are not required to review any portion of an R&R to which no specific objection has been made. *See, e.g., Thomas v. Arn*, 474 U.S. 140, 149-50 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise."). Thus, district judges need not review an objection to an R&R that is general and non-specific. *See, e.g., Warling v. Ryan*, 2013 WL 5276367, *2 (D. Ariz. 2013) ("Because de novo review of an entire R & R would defeat the efficiencies intended by Congress, a general objection 'has the same effect as

would a failure to object.'") (citations omitted); *Haley v. Stewart*, 2006 WL 1980649, *2 (D. Ariz. 2006) ("[G]eneral objections to an R & R are tantamount to no objection at all.").[1]

III. Analysis

A. **Ground 2**

Ground 2 of the amended petition asserts that Petitioner's right to due process was violated because the trial judge in his case (Commissioner Otis) previously served as the prosecutor in a different case in which a different man (Moses Hall), who is BW's ex-husband, was accused of sexually abusing AW. (Doc. 205 at 47, 56-63.) The R&R concludes this claim should be denied for the following reasons: (1) "the existing record (and even the new records supplied by Petitioner) shows only that Commissioner Otis had sufficient involvement in the Moses Hall case to be identified on the Court's docket after appeal and on 'disposition papers,' but nothing to indicate her involvement in charging, or trying Hall, or handling his appeal or PCR proceeding, or performing any other particular task," and thus "the record fails to reveal that Commissioner Otis had any personal involvement in a critical decision in the Moses Hall case that create a tendency to protect the Moses Hall conviction"; (2) alternatively, "even if it were assumed that the Commissioner was involved in every critical decision in the Moses Hall case," such involvement would not violate due process because AW was only a witness in Petitioner's case, not a charged victim; (3) although Petitioner sought to rely on federal cases to support his claim that Commissioner Otis should have been disqualified, those cases "apply a statutory disqualification of federal judges under 28 U.S.C. § 455, which has no application in Petitioner's state court case"; and (4) to the extent Petitioner's claim is that Commissioner Otis's "sarcastic and inappropriate comments" and incorrect rulings during trial were proof of her bias, those claims are conclusory and unfounded. (*Id.*)

Petitioner raises various objections to the R&R's rejection of Ground 2. (Doc. 127

---

[1] *See generally* S. Gensler, 2 Federal Rules of Civil Procedure, Rules and Commentary, Rule 72, at 422 (2018) ("A party who wishes to object to a magistrate judge's ruling must make specific and direct objections. General objections that do not direct the district court to the issues in controversy are not sufficient. . . . [T]he objecting party must specifically identify each issue for which he seeks district court review . . . .").

- 6 -

at 2-3). First, Petitioner argues that the R&R's statement that Commissioner Hall played a limited role in the Moses Hall case is factually inaccurate in light of Commissioner Hall's statement that "I prosecuted Moses Hall" and in light of the fact that she had "familiarity with this defendant's name from at least 7 years prior." (*Id.* at 2-3.) This argument fails for the reasons set forth in the R&R—Commissioner Hall explained that she had only a hazy recollection of the case and the underlying documents reveal that her role was, in fact, quite limited. Petitioner also contends that Commissioner Hall and the prosecutor in his case both admitted that Commissioner Hall had a conflict requiring disqualification. (*Id.*) This argument lacks merit and is based on out-of-context quotations. Finally, Petitioner argues that *Williams v. Pennsylvania*, 136 S.Ct. 1899 (2016), supports his position. (*Id.* at 2-3.) But in *Williams*, the judge had, in his previous role as a prosecutor, authorized the pursuit of the death penalty against *the defendant*. *Id.* at 1905 ("The Court now holds that under the Due Process Clause there is an impermissible risk of actual bias when a judge earlier had significant, personal involvement as a prosecutor in a critical decision regarding the defendant's case."). Here, in contrast, there is no allegation that Commissioner Otis had any involvement in the case against Petitioner. The bottom line is that Petitioner has not established that the Arizona state courts' rejection of his due process claim under these circumstances was contrary to, or involved an unreasonable application of, clearly established federal law.

### B. "Overwhelming" Evidence Of Guilt

The R&R concludes that Ground 8(A) of the amended petition, which involves a claim of prosecutorial misconduct, should be denied for several reasons, including that "[e]ven if the undersigned could find a remediable error, the undersigned would find the error harmless" because "the other evidence of Petitioner's guilt was overwhelming, including clear and convincing testimony from the victim MH, her step-sister, AW, and her mother BW, as well as Petitioner's admission in the confrontation call. Indeed, the defense was left to quibbling in closing argument over [a] jurisdictional issue, with no real attack on the other essential facts of the prosecution's case." (Doc. 125 at 109-119.)

Petitioner raises various objections to the R&R's statement that the evidence of his guilt was "overwhelming." (Doc. 127 at 3-8.) These efforts to relitigate the case fall flat. Even accepting that each witness's testimony may have had some ambiguities and minor inconsistencies, the case involved two different children accusing Petitioner of sexual abuse, Petitioner's wife testifying that he admitted to the abuse, and a police officer testifying that Petitioner made damning statements during a secretly monitored phone call. It was not error for the magistrate judge to deem such evidence overwhelming. *See also Williams*, 2017 WL 34857 at *7 ("We have read and considered counsel's brief, carefully searched the entire record for reversible error and found none. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure and *substantial evidence supported the finding of guilt*.") (emphasis added).

C.  **Ground 4**

In Ground 4 of the amended petition, Petitioner asserts that "the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to preserve or produce four categories of information: (A) the confrontation call and information concerning the loss of the confrontation call; (B) records from the Moses Hall prosecution; (C) disciplinary action against the lead investigator, Detective Fiore; and (D) the victim's counseling records." (Doc. 125 at 82.) The R&R concludes that some of these claims fail on the merits and others are procedurally defaulted. (*Id.* at 82-95.)

Petitioner raises various objections to the R&R's rejection of these claims. (Doc. 127 at 8-9.) First, with respect to the confrontation call, Petitioner asserts that the prosecution's failure to preserve the recording was "intentional" and "done in bad faith," that the chain of custody wasn't properly disclosed to him, and that he suffered prejudice as a result of these violations. (*Id.* at 8.) These arguments lack merit. As the R&R correctly concludes, the state court's factual determinations concerning the loss of the recording are entitled to deference, and in any event the loss of the recording was disclosed to Petitioner in sufficient time for use at trial—indeed, the jury was told about the loss.

As for the Moses Hall records, Petitioner argues that even if the records were

publicly available, the prosecution was required under *Brady* to disclose them. (*Id.* at 8-9.) The problem with this argument is that the R&R concludes that Petitioner's *Brady* claim related to the Moses Hall records also fails for the independent reason that the records were not exculpatory (in light of the inadmissibility of the information contained in those records). (Doc. 125 at 89-90.) Because Petitioner does not object to this portion of the R&R's analysis, his claim fails.

Finally, as for the complaints against Detective Fiore, Petitioner argues the suppression of these records was prejudicial because it is "common knowledge that complaints can be used for effective impeachment" and because he "had a trial strategy to use the information." (Doc. 127 at 9.) These arguments are unavailing. The R&R contains a thorough and compelling explanation of why the complaints had no material impeachment value—they included "vague allegations of some impropriety" with "no pattern of offenses." (Doc. 125 at 92-93.) Petitioner's conclusory assertions do not undermine this careful analysis.

D. **Ground 6**

Ground 6 of the amended petition is a claim under *Napue v. Illinois*, 360 U.S. 264, 269 (1959), that prosecutors presented "the following false testimony: (1) by B.W. about her lack of familiarity with being involved in such a case; (2) by Detective Fiore about the reasons for B.W.'s failure to appear for an appointment; and (3) by A.W. about her reasons for failing to earlier report the abuse". (Doc. 125 at 98.) The R&R concludes that Petitioner fairly presented these claims during the state-court proceedings (*id.* at 98-101) but also concludes these claims fail on the merits because (1) the challenged statements of B.W. and Detective Fiore were elicited during cross-examination, and *Napue* only applies to testimony elicited by the prosecutor, and (2) as for A.W., the record merely shows that she made inconsistent statements concerning why she initially failed to report the abuse, which does not establish that the later statement was false or that the prosecution knew it was false (*id.* at 101-05).

Petitioner raises various objections to the R&R's rejection of his *Napue* claims.

(Doc. 127 at 9-11.) As for B.W. and Detective Fiore, Petitioner argues that *Napue* requires a prosecutor to correct false testimony even if the prosecutor did not elicit it. (*Id.* at 9-10.) However, Petitioner does not cite any Ninth Circuit or Supreme Court law supporting his position. *See generally United States v. Aichele*, 941 F.2d 761, 766 (9th Cir. 1991) (affirming conviction because "the alleged perjury Aichele claims. . . was prompted by Aichele's cross-examination; even assuming the testimony was perjured, the government did not elicit it"); *United States v. O'Keefe*, 128 F.3d 885, 894 (9th Cir. 1997) ("Along with other circuits, we have limited material lies to those that occur as a part of the prosecution's case. . . . Thus, when the defense elicits the alleged perjury on cross-examination, no material falsehood has occurred because the government has not itself knowingly presented false testimony.") (citing *Aichele*, 941 F.2d at 766). Moreover, even if Petitioner's view of the law were correct, his *Napue* claims as to B.W. and Detective Fiore would fail for the independent reason that the challenged testimony was not material. *United States v. Renzi*, 769 F.3d 731, 751 (9th Cir. 2014) ("To establish a *Napue* violation, a defendant must show: (1) that the testimony was actually false, (2) that the government knew or should have known that it was false, and (3) that the testimony was material, meaning there is a 'reasonable likelihood that the false testimony could have affected the judgment of the jury.'"). The Arizona Court of Appeals specifically found that BW's alleged perjury concerning her "experience with the judicial system" was not prejudicial because it did "not go to the foundation of the case" and that Detective Fiore's alleged perjury concerning "the time arrangements of the confrontation call" was not prejudicial for similar reasons. *Williams*, 2017 WL 34857 at *5. These factual findings are entitled to deference under 28 U.S.C. § 2254(d) and seem, in any event, correct to the Court, particularly in light of the overwhelming evidence of Petitioner's guilt.

As for AW, Petitioner argues that her alleged lies were highly prejudicial to his case. (Doc. 127 at 10-11.) This argument, however, fails to address (let alone undermine) the R&R's conclusion that *Napue* wasn't violated because "the mere fact that a witness has made a prior inconsistent statement does not establish that the prosecution knows the trial

testimony is false" and "[w]hen faced with a prior inconsistent statement, a prosecutor is not required to accept the truth of the former statement as opposed to the trial testimony." (Doc. 125 at 104.)

E. **Ground 8**

In Ground 8 of the amended petition, Petitioner asserts a host of different prosecutorial misconduct claims. (Doc. 125 at 109-31.) The R&R concludes that all of these claims lack merit. (*Id.*)

Petitioner raises various objections to the R&R's rejection of Ground 8. (Doc. 127 at 11-14.) First, Petitioner argues, at some length, that the R&R should have concluded that the prosecutor's statements during closing argument amounted to an improper comment on his post-arrest silence. (*Id.* at 11-14.) It is unnecessary to resolve this contention because the R&R identified two independent reasons for rejecting Petitioner's closing argument-related misconduct claim: (1) no error occurred, and (2) any error was harmless in light of the overwhelming evidence of Petitioner's guilt. (Doc. 125 at 115-19.) As discussed in Part III.B above, the Court has already rejected Petitioner's objection to the R&R's finding of overwhelming evidence. Thus, even if Petitioner had demonstrated that the prosecutor's challenged comments were improper, he would not be entitled to habeas relief.

Next, Petitioner challenges the R&R's rejection of his claim that the prosecutor improperly vouched for AW, arguing that (1) no deference should have been afforded to the state appellate court's rejection of this claim because the court didn't explicitly discuss it in the opinion, and (2) the "comparable" decision in *United States v. Martinez Medina*, 279 F.3d 105 (1st Cir. 2002), shows that relief is warranted here. (Doc. 127 at 14.) This argument fails because, as the R&R correctly concludes, the prosecutor did not vouch for AW—rather than "appl[y] its own assurances or extra-judicial knowledge to argue the credibility of the witnesses," the prosecution merely urged the jury to accept AW's testimony by identifying other evidence in the record that supported her claims. (Doc. 125 at 130-31.)

F.  **Ground 10**

In Ground 10 of the amended petition, "Petitioner argues his due process rights were violated when the trial court denied his requests for continuances (to allow for witness interviews, and to allow review of recently disclosed evidence of the recording), forcing Petitioner to give up his right of self-representation." (Doc. 125 at 136.)  The R&R concludes this claim is procedurally defaulted as to the witness interviews (Ground 10(A)). As for the recording (Ground 10(B)), the R&R concludes that Petitioner's claim fails on the merits because (1) "Petitioner fails to show how additional time would have avoided the change in the game.  Petitioner does not suggest that he had a better defense, that additional time would have allowed him to develop and present to the jury.  He simply complains that the new damning evidence made his position worse than it had been before"; (2) "although the Court denied Petitioner a continuance, the timing of the decision meant that Petitioner had four calendar days (including Thursday, October 29, 2015, through Sunday, November 1, 2015) between the disclosure and opening statements, to adjust his defense"; and (3) "[t]his was no general continuance.  It was in the midst of trial. The jury had been impaneled, subjected to voir dire, and were awaiting opening statements. Witnesses had been subpoenaed.  A continuance would have caused disruption to not only the litigants and the court, but to the jurors and witnesses.  The case had already been long delayed in coming to trial, with substantial portions of that delay attributable to Petitioner." (*Id.* at 136-42.)

Petitioner objects to the R&R's rejection of Ground 10(B).  (Doc. 127 at 14-15.) Specifically, Petitioner contends that the prosecution was to blame for some of the earlier trial continuances and that the denial of the continuance was prejudicial because it effectively precluded him from testifying.  (*Id.*)  These arguments lack merit.  As Respondents correctly note in their response: "Regardless of an extension, [Petitioner] would have faced the limitations on his ability to testify because of the risk of impeachment by the confrontation call recording. . . . [G]iven that the trial court ultimately suppressed the newly discovered portions of the confrontation call, and [Petitioner] does not suggest

that it contained any exculpatory statements, he cannot possibly demonstrate any resulting prejudice." (Doc. 132 at 15.)

Near the end of his objections, Petitioner also objects to the R&R's rejection of Ground 10(A). (Doc. 125 at 20.) Petitioner's only argument on this point is that his appointed counsel should have raised this issue during his direct appeal and that this omission has resulted in a miscarriage of justice. (*Id.*) This argument lacks merit for the reasons stated in Respondents' response: "[Petitioner's] conclusory statement that a failure to review his habeas claims will result in a fundamental miscarriage of justice is unavailing. This is particularly so in light of the fact that the R & R considered the principle of miscarriage of justice, and rejected it." (Doc. 132 at 22-23.)

G. **Ground 7**

In Ground 7 of the amended petition, Petitioner "argues that his due process rights were violated by the denial of a hearing to contest the voluntariness of his statements in the confrontation call." (Doc. 125 at 105.) The R&R concludes this claim is procedurally defaulted in part and otherwise fails on the merits, because Petitioner was not in custody when he made the challenged statements. (*Id.* at 105-09.)

Petitioner objects to this analysis, arguing that because his voluntariness claim was based in part on the alleged presence of "promises and undue pressures," the trial court was required to hold a voluntariness hearing and then suppress the resulting statements. (Doc. 127 at 15-16.) This argument fails for the reasons outlined in Respondents' response— Petitioner "was driving his own car, speaking on his own cell phone, and has shown no other form of compulsion to render his statements involuntary," the conversation was "with the victim's mother, not police officers," and "even if the police were trying to trick [Petitioner], police officers often use deception during interrogation, and the Supreme Court has held that such tactics are well within the range of permissible conduct." (Doc. 132 at 16.)

H. **Ground 12**

"In Ground 12, Petitioner argues that his 6th Amendment rights of confrontation

and cross-examination were violated when the trial court precluded evidence of the Moses Hall case, involving allegations by MH, AW and [BW] against the biological father of MH." (Doc. 125 at 143.) The R&R concludes that, even though the Arizona Court of Appeals applied the wrong legal standard when rejecting this claim (by assuming that "adherence to the state evidentiary [rape shield law] was sufficient, without the need to evaluate on a case-by-case basis the legitimate interests in enforcing the state rule and evaluating whether the limits were reasonable and proportionate in light of those needs"), the claim fails on the merits because (1) Petitioner did not offer any evidence that MH's, AW's, and BW's allegations pertaining to Moses Hall were false, and indeed "[t]he jury conviction in the Moses Hall case attests otherwise"; (2) Petitioner also did not offer any "evidence that, prior to the allegations, there was marital discord between Petitioner and BW that would prompt false allegations"; and (3) Petitioner also "proffer[ed] no reason to believe that had impeachment been allowed, that the witnesses would have conceded the falseness of the Moses Hall accusations, or a motivation to concoct the allegations in either that case or this." (*Id.* at 143-53.) Alternatively, the R&R concludes that Petitioner is not entitled to habeas relief because any error was harmless in light of the overwhelming evidence of his guilt. (*Id.* at 153.)

Petitioner objects to this analysis, arguing that his intent in seeking to introduce the Moses Hall-related evidence wasn't to show that MH, AW, and BW had made false allegations during that case, but instead was to show that their experiences during that case showed they "possessed the knowledge needed to successfully fabricate allegations necessary for a conviction in a he said/she said child molestation case." (Doc. 127 at 16.) Petitioner also faults his appointed counsel for not raising this issue during his direct appeal. (*Id.* at 20-21.) These arguments are easily rejected. Petitioner does not explain why a witness's truthful testimony in an earlier case would be helpful in showing that the witness knows how to manipulate the legal system through lies and false allegations. In any event, Petitioner does not identify any clearly established federal law holding that the Confrontation Clause is violated when state rape-shield laws are applied under these factual

circumstances. Additionally, Petitioner does not challenge the R&R's alternative finding that Ground 12 fails because any error was harmless in light of the overwhelming evidence of guilt.

I. **Ground 13**

"In Ground 13, Petitioner argues that his 6th Amendment cross-examination rights were violated when he was precluded from impeaching AW about her allegations of abuse, based upon: (A) delay in reporting; (B) failure to report the abuse when reporting her mother for physical abuse; (C) discrepancies between statements in her interview and at trial (*i.e.* going to CPS to report her mother for abuse vs. going with Petitioner to the hospital for HIV and pregnancy testing); (D) her making a report of statutory rape to the Illinois police department." (Doc. 125 at 155.) The R&R concludes this claim should be denied because the Arizona appellate court's determination that the proffered evidence would have been ineffective in impeaching AW was not contrary to, or an unreasonable application of, Supreme Court law: "AW consistently offered her reasons for not previously reporting the abuse, and her reasons for choosing to do so once told about the abuse of MH. AW made plain she had concluded to not report the abuse to protect her mother and family, and did not falter in that plan until made aware that MH was being abused. Even in the context of a CPS complaint against BW and a rape police report against a third party, those reasons would have remained just as rational and convincing." (*Id.* at 155-59.)

Petitioner objects to this analysis, arguing in conclusory fashion that it would have been "effective" to cross-examine AW because "why did she fear breaking up the family so much that she did not report her stepfather for exposing himself to her but did not fear that reporting her biological mother for child abuse?" (Doc. 127 at 17.) This argument is unavailing. AW was examined, and cross-examined, at length concerning the delayed disclosure of her allegations against Petitioner. It was not contrary to, or an unreasonable application of, Supreme Court law for the Arizona Court of Appeals to conclude that additional lines of inquiry on this topic would not have resulted in the jury reaching a

significantly different impression of AW's testimony.

J. **Ground 20**

"In Ground 20, Petitioner argues that his Due Process rights under [*Youngblood*] and [*Trombetta*] were violated by the denial of his Motion to Suppress Confrontation Call, resulting in the allowance of testimony on the recovered portions of the confrontation call, and admission of the remainder of the call." (Doc. 125 at 180-81.) The R&R concludes this claim should be denied for the independent reasons that (1) "Petitioner never argued facts to show the exculpatory nature of the lost call to the appellate court or trial court, let alone introduced evidence of them"; and (2) "[e]ven if the evidence were exculpatory, the uncontroverted evidence is that the evidence was lost through a technological glitch. There is nothing to show that Detective Fiore (or some other officer) intentionally, or even negligently, disposed of the recording. On this basis alone, the undersigned finds that Petitioner fails to show 'bad faith.'" (*Id.* at 180-88.)

In his objections, Petitioner argues the trial court abused its discretion by denying the suppression motion because "[a]t the time of the denial there was no opposition . . . and all that was known was that in bad faith the State refused to disclosed 'what happened' or the 'chain of custody' and only 6 vague minutes of a 55 minute recording existed." (Doc. 127 at 17.) This argument lacks merit. Plaintiff makes no effort to show that the lost call was exculpatory and his "bad faith" arguments pertain to the prosecutor's arguments in court, not to the underlying explanation of why the evidence was lost.

K. **Ground 25**

"In Ground 25, Petitioner argues his rights under *Anders* were violated when, once Petitioner raised arguable grounds the appellate court was obligated to require counsel to argue them, but failed to do so. Petitioner asserts that the arguable nature of his claims is shown by the appellate court's 13 page decision with 20 legal citations . . . ." (Doc. 125 at 194.) The R&R concludes this claim should be denied because "the state court's reasoned (and authority supported) rejection of Petitioner's claims on their merits does not amount to a finding that the claims were not frivolous. The fact that Petitioner still fails to show a

meritorious claim supports the conclusion that his claims were frivolous. Therefore, *Anders* imposed no requirement for further briefing by counsel." (*Id.* at 194-96.)

Petitioner objects to the R&R's rejection of Ground 25. (Doc. 127 at 17-19.) Although his argument is not entirely clear, he appears to argue that Judge Metcalf's allowance of extensive briefing in this case shows that his underlying claims were not frivolous—and, thus, the Arizona Court of Appeals should have required an attorney to litigate them. (*Id.*) This argument misses the mark. The Court fully agrees with, and adopts, Judge Metcalf's analysis of this issue.

L. **Ground 1**

"In Ground 1, [Petitioner] argues: (A) the statutes under which Petitioner was convicted, Ariz. Rev. Stat. § 13-1401 and 13-1404, 'are vague, do not specify an actual crime, and allow a burden-shifting scheme' in violation of Due Process; and (B) the trial court erroneously instructed the jury [on various issues]." (Doc. 125 at 41.) The R&R concludes these claims should be rejected because "Grounds 1A (burden shifting) and Ground 1B(1) (instruction on inferring intent) . . . were procedurally barred in Petitioner's first PCR proceeding on the basis of the untimeliness of the PCR petition for review" and "Petitioner's state remedies on Ground 1B(2) (instruction on bearer of burden of proof on intent) were not properly exhausted on direct appeal or either PCR proceeding, nor was a procedural bar applied to this claim. Accordingly, the claim is now procedurally defaulted under Arizona's timeliness and waiver bars." (*Id.* at 47.)

In his objections, Petitioner argues that his counsel should have raised a constitutional challenge to A.R.S. §§ 13-1401, -1404 during his direct appeal and the "failure to decide this issue will result in a miscarriage of justice." (Doc. 127 at 19.) This argument lacks merit. *Cf. May v. Ryan*, 807 Fed. App'x 632, 634-35 (9th Cir. 2020).

M. **Ground 3**

"In Ground 3, Petitioner asserts his speed trial rights were violated because of the 530 days between arrest and the start of trial, over his repeated objections, resulting in the loss of evidence, faded memories." (Doc. 125 at 64-65.) The R&R concludes this claim

should be rejected, even though the Arizona courts applied the wrong legal standard when rejecting it during Petitioner's direct appeal, because (1) "of the delay attributable to matters other than the ordinary time required to prosecute the case, almost two thirds (278 days) are attributable to Petitioner, and only one third (142 days) to the state"; (2) "Petitioner did not begin asserting his speedy trial rights until February 27, 2015, at which point 303 days of the 575 had already expired"; and (3) "Petitioner points to no specific prejudice that he ties to the delay occasioned by the state." (*Id.* at 64-82.)

In his objections, Petitioner argues that "[t]his was not a complicated case" and that "[t]he factual background was adopted strictly from Respondents' Answers and is not factual." (Doc. 127 at 19.) These objections lack merit. Petitioner has not identified any specific flaw or error in the R&R's painstaking analysis of this issue.

N.     **Ground 5**

"In Ground 5, Petitioner contends his due process rights were violated by the use of perjured testimony by Detective Fiore before the Grand Jury, regarding: (1) admissions by Petitioner that his accuser was telling the truth; and (2) statements by MW that Petitioner squeezed her breasts." (Doc. 125 at 95.) The R&R concludes this claim should be rejected because the Fourteenth Amendment doesn't require states to use the grand jury process, a violation of state-law grand jury rights is generally not cognizable in a federal habeas proceeding, and "even it were assumed that some violations of due process could occur at a grand jury proceeding based on an effect on the reliability of the trial itself, Petitioner fails to suggest how the purported perjury by Detective Fiore affected his trial." (*Id.* at 95-98.)

In his objections, Petitioner does not identify any cases suggesting the R&R's legal analysis was incorrect. (Doc. 127 at 20-21.) Instead, Petitioner simply questions, rhetorically, whether the legal principles outlined in the R&R are fair. (*Id.*) Such argument does not provide a basis for overruling the R&R's conclusions.

O.     **Ground 9**

"In Ground 9, Petitioner argues that 'the cumulative effect of the State's *Brady*

violations and misconduct at trial violated due process and guaranteed an unfair trial.' He cross references the facts underlying Grounds 4 (*Brady*) and 8 (Prosecutorial Misconduct)." (Doc. 125 at 131.) The R&R concludes this claim should be rejected because (1) this particular claim (as opposed to a more generalized claim of cumulative error) "was never fairly presented to the state appellate court, and was not ruled on by the state court," and is therefore "not properly exhausted" and "now procedurally defaulted"; and (2) alternatively, "the claim in Ground 9 is without merit because the undersigned has concluded that all of the underlying claims of *Brady* violations and prosecutorial misconduct are without merit. Thus, there is no effect of errors to be considered cumulatively." (*Id.* at 131-36.)

In his objections, Petitioner doesn't dispute the R&R's conclusion that he failed to present Ground 9 during the state-court proceedings. (Doc. 127 at 20.) Instead, Petitioner faults his appointed counsel for failing to raise this point. (*Id.*) This argument fails because, among other things, it doesn't address the R&R's alternative finding that Claim 9 fails on the merits (which the Court now reaffirms, having rejected Petitioner's other objections to the R&R's analysis of Claims 4 and 8).

Accordingly, **IT IS ORDERED** that:

(1) Petitioner's objections to the R&R (Doc. 127) are **overruled**.

(2) The R&R's recommended disposition (Doc. 125) is **accepted**.

(3) The amended petition (Doc. 17) is **denied and dismissed with prejudice**.

(4) A Certificate of Appealability and leave to proceed *in forma pauperis* on appeal are **denied** because dismissal is justified by a plain procedural bar and reasonable jurists would not find the procedural ruling debatable and because Petitioner has not made a substantial showing of the denial of a constitutional right.

…

…

…

…

(5)     The Clerk shall enter judgment accordingly and terminate this action.

Dated this 27th day of November, 2020.

_____
Dominic W. Lanza
United States District Judge